UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLUB QUARTERS MANAGEMENT COMPANY, L.L.C.; CLUB QUARTERS FRANCHISE NETWORK, L.L.C.; CLUB QUARTERS MEMBERSHIP NETWORK, L.L.C.; AND SHARED OPERATING SERVICES, L.L.C.,<br>Plaintiffs,<br><br>- against -<br><br>CQ DC ACQUISITION LLC,<br>Defendant. | Case No. 1:26-cv-09393-DLC<br><br>**Oral Argument Requested** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF NATHALIE ABINADER OR, IN THE ALTERNATIVE, TO ACCEPT THE REPLY DECLARATION OF JOHN PAUL NICHOLS**


AKERMAN LLP

Joshua D. Bernstein
Kathleen M. Prystowsky
Keith Blackman
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
(212) 880-3800

*Attorneys for Plaintiffs Club Quarters Management Company, L.L.C., Club Quarters Franchise Network, L.L.C., Club Quarters Membership Network, L.L.C., and Shared Operating Services, L.L.C.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1
RELEVANT BACKGROUND .......... 3
ARGUMENT .......... 4
I. THE COURT SHOULD STRIKE THE ABINADER DECLARATION .......... 4
A. The Abinader Declaration Contravenes the Procedure the Court Adopted in Reliance on Defendant's Representations .......... 4
B. The Abinader Declaration Is Not Based on Personal Knowledge .......... 6
II. ALTERNATIVELY, THE COURT SHOULD ACCEPT THE NICHOLS REPLY DECLARATION, REQUIRE LIVE TESTIMONY, AND PERMIT TAILORED DISCOVERY .......... 8
CONCLUSION .......... 9



89282581

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*,
301 F.R.D. 31 (S.D.N.Y. 2014) ....................5

*Bernstein v. Vill. of Wesley Hills*,
95 F. Supp. 3d 547 (S.D.N.Y. 2015)....................7

*Bruchman v. Standard Chartered Bank, PLC*,
997 F. Supp. 481 (S.D.N.Y. 1998) ....................7

*Dietz v. Bouldin*,
579 U.S. 40 (2016)....................4, 6

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011)....................5

*Nat'l Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,
884 F. Supp. 2d 108 (S.D.N.Y. 2012)....................5, 6

*Outlaw v. City of New York*,
No. 22 Civ. 9288 (PAE), 2024 WL 4825955 (S.D.N.Y. Nov. 19, 2024)....................5

*Payne v. Huntington Union Free Sch. Dist.*,
219 F. Supp. 2d 273 (E.D.N.Y. 2002) ....................7

*Sellers v. M.C. Floor Crafters, Inc.*,
842 F.2d 639 (2d Cir. 1988)....................7

**Rules**

Fed. R. Evid. 602 ....................6



89282581

Plaintiffs Club Quarters Management Company, L.L.C., Club Quarters Franchise Network, L.L.C., Club Quarters Membership Network, L.L.C., and Shared Operating Services, L.L.C. (collectively, "Club Quarters" or "Plaintiffs") respectfully submit this memorandum of law, pursuant to the Court's inherent authority to manage its docket and courtroom, in support of their motion (i) to strike the Declaration of Nathalie Abinader filed November 11, 2026 [Dkt. No. 28-2] (the "Abinader Declaration" or "Abinader Decl."), submitted by defendant CQ DC Acquisition LLC ("Owner") in opposition to Plaintiffs' motion for a preliminary injunction (the "Motion"), or, in the alternative, (ii) to accept the Reply Declaration of John Paul Nichols (the "Nichols Reply Declaration"), direct that Ms. Abinader appear for cross-examination at the preliminary injunction hearing, and permit limited, tailored discovery concerning Ms. Abinader's role and the basis for her purported knowledge in advance of such hearing.

## **PRELIMINARY STATEMENT**

At the November 6, 2026 conference, the Court proposed addressing irreparable harm first and asked whether that issue presented any factual disputes requiring witness testimony. Plaintiffs' counsel explained that Plaintiffs' only fact witness on irreparable harm was John Paul Nichols, and that Plaintiffs did not know whether Owner would contest his testimony. Owner's counsel answered that "with respect to this particular element, I don't believe there will be any facts in dispute with respect to Mr. Nichols' affidavit," and that he did not expect to call a witness because "this is a legal issue for the Court to determine." (Dkt. 24, Tr. 11:16-12:9.) Relying on those representations, the Court scheduled oral argument on a fully submitted record and directed: "No witnesses need be present." *Id.*

Owner then did the opposite. Rather than rest on the legal argument its counsel previewed, without informing the Court or Plaintiffs' counsel, Owner submitted a declaration from Ms. Abinader, a Vice President of Asset Management at Owner's asset manager, Jones Lang LaSalle

Americas, Inc. ("JLL"), offering sworn factual testimony that Club Quarters "has made a deliberate decision to abandon that system," that it "has gradually shifted away from its core business model," and that the Club Quarters brand "can no longer drive reservations to the Hotel." (Abinader Decl., ¶¶ 7, 18, 19.) Plaintiffs' moving papers provide some explanation of why Owner's abandonment theory in the Notice of Default is defective, but did so from the perspective of addressing the issue of likelihood of success on the merits. (*See* Dkt. No. 7, Nichols Decl., ¶¶ 69-84.) Owner now appears to deploy these assertions for a different purpose: to tell the Court, through a fact witness rather than legal argument, that Club Quarters has nothing to lose if the Hotel is terminated because it is already walking away from its own brand – and, therefore, that Mr. Nichols's sworn testimony about the irreparable injury to the Club Quarters brand, network, and goodwill should not be believed. (*See id.* ¶¶ 88-93.) That is a direct credibility contest over the very testimony Owner's counsel told the Court would not be disputed, presented through a witness who will not appear so that the Court can assess her credibility.

Nor does Ms. Abinader appear to have personal knowledge of what she describes. She is employed by JLL, not by Owner or Club Quarters, and she bases her statements on her "personal knowledge and understanding, and upon my review of JLL's file for this property." (Abinader Decl., ¶ 3.) Nothing in her declaration explains how an employee of Owner's asset manager acquired knowledge of Club Quarters' internal business strategy, its operations at other hotels, or its supposed abandonment of its brand. Plaintiffs are entitled to test those assertions through cross-examination, and cannot do so meaningfully without limited discovery.

The Court should therefore strike the Abinader Declaration and hold the parties to the procedure the Court adopted: oral argument on November 18 without witnesses. Alternatively, if the Court is inclined to consider the Abinader Declaration, fairness requires that the Court accept

the Nichols Reply Declaration, direct that Ms. Abinader appear for cross-examination, and permit Plaintiffs to take tailored discovery into Ms. Abinader's role and the basis for her purported knowledge in advance of the preliminary injunction hearing.

## **RELEVANT BACKGROUND**

On November 6, 2026, the Court held a conference on the Motion. The Court proposed addressing irreparable harm first, and explained: "The second issue is whether there are any facts in dispute that require the presentation of testimony or evidence at the hearing, or if the parties can agree on the submission of the record." (Dkt. 24, Tr. 10:6-9.) The Court also observed: "I'm not sure that there are facts in dispute material to the issue of irreparable harm that require discovery, but that's an issue." (*Id.*, Tr. 9:2-4.)

Plaintiffs' counsel advised the Court that Plaintiffs had proffered the declaration of Mr. Nichols, and stated: "I do not know whether it is the position of the defendant that there are or are not any contested facts as to whether Mr. Nichols would need to be present for any cross-examination or not." (*Id.*, Tr. 11:1-7.) The Court then asked Owner's counsel: "And do you think that there will be facts in dispute knowing that the only factual presentation that plaintiff is going to rely on is Mr. Nichols' affidavit?" (*Id.*, Tr. 11:16-18.) Owner's counsel responded: "With respect to irreparable harm, I don't want to speak with certainty, but I do not believe that there will be facts in dispute. With respect to the other elements, I think there very well may be. But with respect to this particular element, I don't believe there will be any facts in dispute with respect to Mr. Nichols' affidavit." (*Id*, Tr. 11:19-24.). Asked whether Owner would call a witness on irreparable harm, counsel stated: "I do not, as I sit here now. I think this is a legal issue for the Court to determine." (*Id.*, Tr. 11:25-12:3.)

Based on those representations, the Court ruled: "So let's schedule oral argument, understanding that the parties will be resting on the record that will be fully submitted as of

November 13, and we'll have that oral argument on the afternoon of November 18. No witnesses need be present." (*Id.*, Tr. 12:4-9.) The Court thereafter entered a scheduling order. Dkt. Nos. 20, 27.

On November 11, 2026, Owner filed its opposition to the Motion, together with the Abinader Declaration. Ms. Abinader is "a Vice President of Asset Management at Jones Lang LaSalle Americas, Inc., Hotels and Hospitality Division ("JLL")." (Abinader Decl. ¶ 1.) She attests that the statements in her declaration "are based on my personal knowledge and understanding, and upon my review of JLL's file for this property." (*Id.* ¶ 3.) She nonetheless asserts that Club Quarters "has made a deliberate decision to abandon that system," (*id.* ¶ 7); that "CQ has gradually shifted away from its core business model, while simultaneously beginning to re-brand some of the CQ hotels under its management and launching a new business line, Altus Hospitality, to serve as a third-party manager for its properties," (*id.* ¶ 18); and that the Club Quarters brand "can no longer drive reservations to the Hotel," (*id.* ¶ 19). She also characterizes how Club Quarters presented itself when Owner purchased the Hotel in 2016 and the share of the Hotel's reservations attributable to Club Quarters members. (*Id.* ¶¶ 16, 19.) Plaintiffs' moving papers had already addressed, and refuted, Owner's abandonment theory as a basis for the Notice of Default. (*See* Dkt. No. 7, Nichols Decl., ¶¶ 69-84.) The Abinader Declaration repackages that theory as sworn fact and offers it in opposition to Mr. Nichols's irreparable harm testimony.

## **ARGUMENT**

### I. **THE COURT SHOULD STRIKE THE ABINADER DECLARATION**

#### A. **The Abinader Declaration Contravenes the Procedure the Court Adopted in Reliance on Defendant's Representations**

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 46

(2016) (collecting cases). That authority includes the power to strike filed materials that are "abusive or otherwise improper under the circumstances." *Nat'l Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 115 n.5 (S.D.N.Y. 2012) (quoting *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 763 F. Supp. 2d 423, 581 (S.D.N.Y. 2011)). It also supports preclusion where a party's submission contravenes the court's scheduling and case-management process and wastes the time of the Court and opposing counsel. *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 35, 38–39 (S.D.N.Y. 2014); *see also Outlaw v. City of New York*, No. 22 Civ. 9288 (PAE), 2024 WL 4825955, at *3 (S.D.N.Y. Nov. 19, 2024) (recognizing inherent power to control the docket and strike material reflecting procedural impropriety or noncompliance with court rules or orders).

The Court structured the irreparable harm phase around a single question: whether there were facts in dispute that required witness testimony. (Dkt. 24, Tr. 9:2-12:9.) The Court put that question directly to Owner, and Owner's counsel answered that he did not believe there would be "any facts in dispute with respect to Mr. Nichols' affidavit" and that irreparable harm was "a legal issue for the Court to determine." (*Id.* Tr. 11:19-12:3.) On the strength of those representations, the Court set oral argument on a fully submitted record, dispensed with witnesses, and adopted an expedited schedule that afforded Plaintiffs two days to reply to Owner's opposition. (*Id.*, Tr. 12:4-9.)

The Abinader Declaration cannot be reconciled with that procedure. It does not merely supply background, authenticate the parties' agreements, or restate the legal argument Owner's counsel previewed. Plaintiffs' moving papers already explained why Owner's abandonment theory is wrong and why the Notice of Default built on it is defective. (Dkt. 7, Nichols Decl., ¶¶ 69-84.) What is new is the purpose for which Owner now offers that theory: through a fact witness, Owner



89282581

asserts that Club Quarters "has made a deliberate decision to abandon that system" and operates a brand that "can no longer drive reservations to the Hotel," (Abinader Decl., ¶¶ 7, 19), in order to tell the Court that Club Quarters has nothing to lose if the Hotel is terminated and that Mr. Nichols's sworn testimony about the irreparable injury to the Club Quarters brand, network, and goodwill should not be believed. (*See* Dkt. 7, Nichols Decl., ¶¶ 88-93.) That is a credibility contest over the very testimony Owner's counsel said would not be disputed. If Owner intended to ask the Court to disbelieve Mr. Nichols, the time to say so was when the Court asked, so that the Court could schedule a hearing at which it could assess the credibility of both witnesses. Instead, Owner obtained a no-witness procedure and then offered contested factual testimony from a witness who will not appear, leaving the Court no means of evaluating her credibility and Plaintiffs no opportunity to test her assertions.

Permitting Owner to proceed in this manner would undermine the "orderly and expeditious disposition" the Court's schedule was designed to achieve, *Dietz*, 579 U.S. at 45, and would reward a litigant for submitting the very type of evidence it told the Court it would not offer. Under these circumstances, the Abinader Declaration is "improper under the circumstances" and should be stricken. *Nat'l Res. Def. Council*, 884 F. Supp. 2d at 115 n.5. Striking it is also the most efficient remedy: it restores the record and procedure on which the Court relied in setting the November 18 argument, without disturbing the schedule.

**B. <u>The Abinader Declaration Is Not Based on Personal Knowledge</u>**

The Abinader Declaration is independently improper because Ms. Abinader does not appear to have personal knowledge of the matters to which she attests.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Ms. Abinader is a Vice President of Asset Management at JLL, Owner's asset manager, and states only that her

declaration rests on her "personal knowledge and understanding, and upon my review of JLL's file for this property." (Abinader Decl., ¶¶ 1, 3.) A general recital of personal knowledge does not supply the required foundation where, as here, nothing in the declaration shows how the declarant could have acquired knowledge of the matters described. *See Bruchman v. Standard Chartered Bank, PLC*, 997 F. Supp. 481, 487 (S.D.N.Y. 1998) ("The Court will not speculate as to how [the affiant] might have had personal knowledge" because "the affiant must demonstrate affirmatively personal knowledge"); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) (affidavit insufficient where "there is no way to ascertain which portions" were based on personal knowledge rather than information and belief); *Bernstein v. Vill. of Wesley Hills*, 95 F. Supp. 3d 547, 559 (S.D.N.Y. 2015) ("Merely being 'aware' of purported facts is a far cry from having…personal knowledge.") (quoting *Payne v. Huntington Union Free Sch. Dist.*, 219 F. Supp. 2d 273, 279 (E.D.N.Y. 2002).

Ms. Abinader's most consequential assertions concern Club Quarters' internal business strategy – its supposed "deliberate decision to abandon that system," its alleged pivot toward a third-party management business, and its re-branding of other hotels under its management. (Abinader Decl., ¶¶ 7, 18.) Ms. Abinader does not work for Club Quarters, does not claim to have participated in any Club Quarters business decisions, and does not identify any document or other source for these assertions. Nor does she explain how an employee of Owner's asset manager would know why Club Quarters made decisions concerning hotels other than the Hotel, or what the Club Quarters brand is worth across its network. Her characterization of what Club Quarters "touted" when Owner purchased the Hotel in 2016, (*id.* ¶ 16), likewise lacks any stated foundation. While Ms. Abinader affirms "JLL has been the asset manager for the Hotel since 2016," she does not affirm that she has served in that capacity since that time. (*Id.*, ¶ 1.) By contrast, Mr. Nichols,

testified based on his personal knowledge, as the Chief Executive Officer of Club Quarters Management Company, L.L.C. (Dkt. 7, Nichols Decl., ¶¶ 1-2.) Assertions untethered to any identified basis in personal knowledge are an improper vehicle for asking the Court to disbelieve that sworn testimony – particularly testimony that Owner's counsel represented would be undisputed.

Accordingly, the Abinader Declaration should be stricken in its entirety. At a minimum, the paragraphs addressing Club Quarters' business practices, brand, and alleged abandonment of its system should be stricken.

## II. ALTERNATIVELY, THE COURT SHOULD ACCEPT THE NICHOLS REPLY DECLARATION, REQUIRE LIVE TESTIMONY, AND PERMIT TAILORED DISCOVERY

If the Court is inclined to consider the Abinader Declaration, Plaintiffs respectfully request that the Court accept the Nichols Reply Declaration, which responds directly to the factual assertions in the Abinader Declaration. Plaintiffs do not seek to relitigate Owner's abandonment theory, which the moving papers already addressed. (*See e.g.* Dkt. No. 7, Nichols Decl., ¶¶ 69-84.) But having offered sworn testimony that Club Quarters is abandoning its brand, and asking the Court on that basis to reject Mr. Nichols's irreparable harm testimony, Owner cannot fairly deny Plaintiffs the opportunity to respond to those specific assertions with sworn testimony of their own. A responsive declaration is necessary so that the record on irreparable harm is complete and fairly presented.

Plaintiffs further request that the Court direct that Ms. Abinader appear for cross-examination at the preliminary injunction hearing. The Court's procedure for nonjury proceedings contemplates exactly that: "If there are witnesses that plaintiff calls to witness, they are sworn to the accuracy and truthfulness of their affidavits and tendered for cross, then the defendant calls his witnesses." (Dkt. 24, Tr. 9:11-19.) Because Owner has placed Mr. Nichols's credibility at issue by

offering competing sworn testimony, the Court should have the opportunity to see and hear the witnesses before deciding whom to believe. If the Abinader Declaration is received, Plaintiffs will request to cross-examine Ms. Abinader, whose assertions about Club Quarters' business are, on their face, not grounded in personal knowledge.

Meaningful cross-examination, however, requires limited discovery. The Court recognized at the conference that "the issue is whether you need any discovery before the hearing," (*Id.*, Tr. 9:2-3). Plaintiffs therefore request leave to take tailored discovery limited to (i) Ms. Abinader's role with respect to Owner and the Hotel, including the scope of JLL's engagement as Owner's asset manager; (ii) the basis for her purported knowledge of Club Quarters' business practices and its supposed abandonment of the Club Quarters brand; and (iii) the documents on which she relied, including what she describes as "JLL's file for this property." (Abinader Decl., ¶ 3.) Plaintiffs anticipate that this discovery would consist of a targeted document production and a short deposition of Ms. Abinader, and could be completed on an expedited basis.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court strike the Abinader Declaration and proceed with oral argument on November 18, 2026 without witnesses, as originally scheduled; or, in the alternative, accept the Nichols Reply Declaration, direct that Ms. Abinader appear for cross-examination at the preliminary injunction hearing, and permit tailored discovery regarding Ms. Abinader's role with Owner and the basis for her purported knowledge; together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 13, 2026

AKERMAN LLP

By: /s/ *Kathleen M. Prystowsky*

Joshua D. Bernstein
Joshua.Bernstein@akerman.com
Kathleen M. Prystowsky
Kathleen.Prystowsky@akerman.com
Keith Blackman
Keith.Blackman@akerman.com
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Tel: (212) 880-3800
Fax: (212) 259-7181

*Attorneys for Plaintiffs Club Quarters Management Company LLC, Club Quarters Franchise Network, L.L.C., Club Quarters Membership Network, L.L.C., and Shared Operating Services, L.L.C.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the memorandum of law accompanying this certificate does not exceed 8,750 words and, thus, complies with Local Civil Rule 7.1(c). Based on the word processing program used to prepare the memorandum of law, the total number of words, exclusive of the caption, table of contents, table of authorities, signature block and this certificate, but including footnotes, is 2,870.

*s/ Kathleen M. Prystowsky*
Kathleen M. Prystowsky